719 P.2d 291

### ADAMS REALTY CORPORATION, a California corporation, Defendant-Appellee,

v.

### REALTY CENTER INVESTMENTS, INC., a California corporation, Defendant-Appellant.

No. 1 CA–CIV 8267.

Court of Appeals of Arizona, Division 1, Department D.

March 20, 1986.

Reconsideration Denied May 7, 1986.

---

Eaton, Lazarus & Dodge, Ltd. by Carlos R. Castro, James B. Ball, Udall & Powers, P.C., Phoenix, for defendant-appellee.

Herbert M. Bohlman, Tempe, for defendant-appellant.

## OPINION

JACOBSON, Judge.

This appeal arises from the trial court's judgment upon a complaint for interplead-

er, granted in favor of defendant Adams Realty Corporation (Adams Realty), and against defendant, Realty Center Investment, Inc. (Realty Center). The issue involved is whether a buyer of Arizona real estate that agrees to assume an obligation to pay a commission to the buyer's out-of-state brokers may refuse payment on grounds that the out-of-state broker is not licensed in Arizona.

The facts are not in material dispute. Plaintiff, Sycamore Shadows Associates (Sycamore Shadows), an Arizona limited partnership, which is not a party to this appeal, contracted with Adams Realty, a California corporation, for the sale of a 120-unit apartment building in Mesa, Arizona. This sales contract was the culmination of Sycamore Shadow's written listing agreement with Coldwell Banker, a real estate broker licensed in Arizona. The sales contract was executed for the listed price with the additional help of Adams Realty's real estate broker, Realty Center, which was licensed in California but not in Arizona. The parties fixed the brokers' total commissions at four percent of the sales price, or $172,000 to be paid to Coldwell Banker.

An escrow account was opened with Ticor Title Insurance Company (Ticor) on September 29, 1983. Coldwell Banker agreed that Realty Center was entitled to one-half of the $172,000 commission, as co-operating broker. In October of 1983, Coldwell Banker and Realty Center joined in amending the escrow instructions to stipulate that each broker would receive one half of the $172,000 commission upon completion of the sales transaction. Thereafter, the buyer, Adams Realty, encountered difficulty in raising the amount due before close of escrow. On November 28, 1983, at Adams Realty's request, Realty Center instructed Ticor to credit the seller, Sycamore Shadows, with its portion of the commission due. Thus, Adams Realty was able to complete its obligations under the contract by paying $86,000 less in up-front money to close the transaction. This sum of $86,000 was secured by a note from Adams Realty to Realty Center, payable January 31, 1984, and an irrevocable assignment of interest in an equivalent amount to be distributed from Adams Realty's future payments.

Subsequent to closing, Ticor dispersed $21,500, or one-fourth of the $86,000 commission due, to Realty Center. Attorneys for Adams Realty responded to this action with a letter dated December 22, 1983, advising Ticor that it had violated the amended escrow instructions, which stipulated to full deferment of Realty Center's $86,000 commission until January 31, 1984. The letter further proposed that Ticor might have violated A.R.S. § 32-2155.[1] Finally, Adams Realty demanded that Ticor hold the remaining sum of $64,500 in escrow until further instructions from Adams Realty and Sycamore Shadows.

Ultimately, Coldwell Banker received full satisfaction of its $86,000 commission, and on May 18, 1984, Sycamore Shadows received an overpayment from Adams Realty of $64,500 plus interest, in addition to the final balance due. Adams Realty then requested a refund of this $64,500 from Sycamore Shadows, claiming that Realty Center was not a licensed broker in Arizona and, therefore, not entitled to a broker's commission under the purchase contract. Sycamore Shadows subsequently filed a complaint for interpleader, naming Adams Realty and Realty Center as defendants and depositing the $64,500 plus interest with the court.

Both Adams Realty and Realty Center answered by claiming a right to the disputed sum. Adams Realty moved for summary judgment, asserting that Realty Center was not a licensed real estate broker in Arizona and thus had no enforceable claim to the broker's commission under A.R.S.

---

1. A.R.S. § 32-2155(B) provides in part:
   It is unlawful for a ... corporation, whether obliger, escrow holder or otherwise, to pay or deliver to anyone compensation for performing any of the acts specified by this chapter, as a broker, who is not licensed at the time the service is rendered.

§§ 32–2152, 2154 and 2155. Realty Center cross-claimed against Adams Realty, counterclaimed against Sycamore Shadows and moved for summary judgment, contending that the $64,500, plus interest, was an earned real estate commission to which it was fully entitled.

The trial court discharged Sycamore Shadows from liability and thereafter considered the adverse claims of Adams Realty and Realty Center. Judgment was entered on February 8, 1985, denying Realty Center's motion for summary judgment and dismissing its cross-claim against Adams Realty. The trial court granted Adams Realty's motion for summary judgment, ruling that it was entitled to recover the full $64,500, plus interest.

■■■ The Arizona Real Estate Act requires that all practicing real estate salespersons be licensed to protect the public from "unscrupulous and unqualified persons". *Pruitt v. Pavelin*, 141 Ariz. 195, 685 P.2d 1347 (App.1984). Brokers in Arizona must comply with the licensing requirements to recover sales commissions, as the public interest in the propriety of such transactions is paramount. *Red Carpet-Barry & Associates, Inc. v. Apex Associates Inc.*, 130 Ariz. 302, 635 P.2d 1224 (App.1981). We have specifically held that, under A.R.S. §§ 32–2152[2] and 2155, an unlicensed real estate salesperson may not bring suit to recover a broker's commission for services requiring a license. *Ness v. Greater Arizona Realty, Inc.*, 117 Ariz. 357, 572 P.2d 1195 (App.1977). Judicial aid is unavailable to parties who seek recovery of broker commissions in violation of this section. *Realty Executives, Inc. v. Northrup, King & Co.*, 24 Ariz.App. 400, 539 P.2d 514 (1975); *Farragut Baggage &*

*Transfer Co. v. Shadron Realty, Inc.*, 18 Ariz.App. 197, 501 P.2d 38 (1972).

While it is clear that the courts will not aid those who fail to comply with this state's licensing provisions, it is equally clear that the legislature made an exception to this rule in the case of out-of-state brokers. A.R.S. § 32–2163 provides:

It is unlawful for any licensed broker to employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this chapter, who is not a licensed broker, or a salesman licensed under the broker employing or compensating him, *but a licensed broker may pay compensation to a broker of another state and may also receive compensation.*

(emphasis added).

■■■ Realty Center contends that it was legally entitled under A.R.S. § 32–2163 to share a commission with Coldwell Banker for a real estate commission earned in Arizona and, therefore was not prohibited under A.R.S. § 32–2152, from maintaining an action to enforce that legal right. We agree.

■■■ Adams Realty agrees that if this transaction had been structured so that Coldwell Banker had received the entire commission from escrow, then Coldwell Banker would have been legally obligated (and Realty Center could have enforced that obligation) to pay a commission to Realty Center.[3] Since the transaction was structured so that the escrow agent paid the commission, Adams Realty argues that A.R.S. § 32–2155 prohibits Realty Center from enforcing its rights. This argument basically proposes that while a principal could legally perform the act in question, the legislature has adopted a public policy

**2.** A.R.S. § 32–2152 provides in part:

An action for collection of compensation earned may be maintained in the courts of this state by any broker or salesman. To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesman at the time the claim arose.

**3.** The trial court also held:

Had the transaction which is the subject of this lawsuit been structured in such a way that the entire brokerage commission was payable to Coldwell Banker, (licensed as a broker in Arizona), with Coldwell Banker to pay a portion of that commission to RCI [Realty Center], RCI could legitimately have asserted its right under 32–2163 to receive the agreed percentage of that commission from Coldwell Banker.

that would prohibit an agent or obligor of that principal from performing the same act. No sound reason for such a policy is readily apparent. Rather, policy considerations dictate the opposite conclusion—that is, that interstate real estate transactions are to be encouraged. Recognizing that brokers in several states are often involved in Arizona real estate transactions and that many such brokers would not be licensed in Arizona, the legislature enacted A.R.S. § 32–2163 allowing an out-of-state broker to collect commissions when providing services in connection with a licensed, in-state broker.

■ Because A.R.S. § 32–2163 was intended to recognize the interstate character of Arizona real property transactions, A.R.S. §§ 32–2152 and 2155 should not be construed to thwart that recognition. A.R.S. § 32–2155 prohibits compensation to anyone "who is not licensed at the time the service is rendered." In our opinion, this statute merely provides that a broker not legally entitled to receive commissions in Arizona may not do indirectly (through an escrow agent or obligor) what the law prohibits it from doing directly (through the seller or buyer). When read in this context we see nothing in A.R.S. § 32–2155 that would prohibit Ticor, as an agent of Coldwell Banker, from paying a commission to any party who could legally receive a commission from Coldwell Banker.

Likewise, if A.R.S. § 32–2155 does not prohibit the payment of the commission here, neither does A.R.S. § 32–2152, as both the trial court and Adams Realty agree that this statute would not prohibit Realty Center from maintaining an action directly against Coldwell Banker. Adams argues, however, that this is not an action against Coldwell Banker, but against the buyer, Adams Realty.

■ This argument misconstrues the legal effect of the transaction between the parties. The original right to receive a commission and the obligation to pay a portion of the commission to Realty Center was Coldwell Banker's. Adams Realty, by its agreement with Realty Center, may be considered to have undertaken Coldwell Banker's obligation to Realty Center. We have held that Realty Center could enforce the obligation against Coldwell Banker and therefore it follows that Realty Center is entitled to enforce the same obligation against Adams Realty, which undertook Coldwell Banker's obligation.

■ As this matter arises out of contract, Realty Center is entitled to its reasonable attorneys fees and costs, both on appeal and in the trial court, pursuant to A.R.S. § 12–341.01(A). Realty Center is ordered to comply with Rule 21, Arizona Rules of Civil Appellate Procedure, in filing a statement of fees and costs for both proceedings with this Court.

The judgment of the trial court is accordingly reversed and the matter remanded with directions to enter judgment in favor of Realty Center in accordance with our mandate.

GRANT, P.J., and SHELLEY, J., concur.