The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Dirk REEVES, Defendant–Appellant.

No. 08CA0450.

Colorado Court of Appeals, Div. I.

July 8, 2010.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sarah A. Burtis, Deputy State Public Defender, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Defendant, Dirk Reeves, appeals his judgment of conviction entered on jury verdicts finding him guilty of one count of possession of more than one gram of a schedule II controlled substance and three counts of possession of one gram or less of a schedule IV controlled substance. He also appeals the sentence imposed on the three counts. We affirm the conviction and do not reach the argument regarding the sentence as the issue is moot.

Defendant was arrested on an unrelated offense and searched. Police found a small baggie in his sock that contained various pills later determined to be schedule II and IV controlled substances. The prosecution charged defendant with seven related counts, including two which the prosecution dropped and one on which the jury acquitted him after a two-day trial.

Count 1 charged him with a class 4 felony—possession of "more than one gram of a material compound, mixture or preparation that contained Oxycodone, a Schedule II controlled substance; in violation of section 18–18–405(1), 2(a)(I)(A)." The jury found him guilty on count 1 and three other charges. The trial court sentenced defendant to five years in community corrections on count 1

and to concurrent two-year terms in community corrections on counts 2, 3, and 4. This appeal followed.

## I. Jury Instruction

Defendant contends that the trial court violated his constitutional rights when it incorrectly instructed the jury on the elements of count 1, possession of more than one gram of a schedule II controlled substance. We disagree.

 "We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law." *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo.App.2007). "Where an objection is properly preserved, we review the jury instruction for harmless error." *People v. Gallegos,* —— P.3d ——, ——, 2010 WL 725448 (Colo.App.2010).

Over defendant's objection to the statement of the fifth element of the offense, the court gave the following instruction to the jury:

> The elements of the crime of Possession of More Than One Gram of a Schedule II Controlled Substance are:
>
> (1) That the defendant,
>
> (2) in the State of Colorado, at or about the date and place charged,
>
> (3) knowingly,
>
> (4) possessed,
>
> (5) more than one gram of any material, compound, mixture, or preparation that contains any quantity of a Schedule II controlled substance.

With regard to the fifth element, a lab technician testified at defendant's trial that the one oxycodone tablet defendant possessed weighed 1.03 grams. However, she also clarified that her testing showed only that the tablet contained oxycodone and that it might contain other substances as well.

Defendant contends that the statute requires proof that he possessed more than one gram of oxycodone itself, and therefore the instruction as to the fifth element violated his constitutional rights because it allowed the jury to convict him for possessing a tablet weighing more than one gram but possibly containing only one gram or less of oxycodone. Because we disagree with defendant's interpretation of the statute, we conclude that the jury instruction did not violate his rights.

Section 18–18–405(1)(a), C.R.S.2009, makes it unlawful for a person to possess a controlled substance unless authorized by exceptions not pertinent here. " 'Controlled substance' means a drug, substance, or immediate precursor included in schedules I though V" of the statute. § 18–18–102(5), C.R.S.2009. In this section, the offense is not defined by the amount or weight of the controlled substance in one's possession.

The statute provides that the offense is treated as a different class of felony depending on the schedule on which the controlled substance is listed. Thus, because oxycodone is a controlled substance listed on schedule II and no exceptions apply, defendant was charged with a class 4 felony. *See* § 18–18–405(2)(a)(I)(A), C.R.S.2009. Under this subsection, the offense level and sentence do not depend on the amount or weight of the substance possessed, with two exceptions.

First, subsection (2)(a) provides that if the offense involves possession of "one gram or less of any material, compound, mixture, or preparation that contains any quantity of a schedule I through IV controlled substance," the offense is charged under subsection (2.3) and is a class 6 felony rather than a class 4 felony.

Second, under subsection (3)(a), possession of "at least twenty-five grams or one ounce ... of any material, compound, mixture, or preparation that contains a schedule I or II controlled substance" shall be punished by at least the minimum term of incarceration in the presumptive range provided by the statute, and increasingly severe penalties apply to possession of even greater amounts. This provision has been described as a "sentence enhancer," not a separate offense. *See People v. Esquivel–Alaniz,* 985 P.2d 22, 25 (Colo. App.1999).

When the various subsections applicable to the offense for which defendant was convicted—possession of more than one gram of a schedule II controlled substance—are con-

joined, the statute defines the offense as follows: "[I]t is unlawful for any person knowingly to ... possess ... a controlled substance." § 18–18–405(1)(a). "[A]ny person who violates any of the provisions of subsection (1) of this section ... [i]n the case of a controlled substance listed in schedule I or II of part 2 of this article, commits ... a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II." § 18–18–405(2)(a)(I)(A). Thus, although separate carve-out provisions apply when (1) a "mixture ... weighing one gram or less ... contains any quantity" of a controlled substance, or (2) a mixture contains at least twenty-five grams or one ounce, those exceptions do not apply here, and there is no express requirement that an offense charged under subsection (1)(a) arises from the possession of any specific minimum weight of the controlled substance itself.

In interpreting a statute, we must ascertain and effectuate the intent of the legislature. *People v. Weiss,* 133 P.3d 1180, 1184 (Colo.2006). Whenever possible, we must determine the General Assembly's intent from the plain and ordinary meaning of the statutory language. *Woellhaf v. People,* 105 P.3d 209, 215 (Colo.2005). We discern the clarity or ambiguity of the statutory language by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole. *People v. Tixier,* 207 P.3d 844, 847 (Colo.App. 2008). We must read and consider the statute as a whole "to give consistent, harmonious, and sensible effect to all of its parts." *People v. Hernandez,* 160 P.3d 263, 264 (Colo.App.2007) (quoting *Farmers Reservoir & Irrigation Co. v. City of Golden,* 113 P.3d 119, 130 (Colo.2005)), *aff'd,* 176 P.3d 746 (Colo.2008). We presume that the legislature intended the entire statute to be effective. *Tixier,* 207 P.3d at 847. We will not follow a statutory interpretation that leads to an illogical or absurd result. *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004).

In order to read the statute consistently as a whole, we conclude that under this statutory framework, possession of more than one gram of a compound, mixture, or preparation containing a controlled substance

on schedule II constitutes a class 4 felony in violation of subsection (1)(a). Possession of one gram or less of such a compound, mixture, or preparation constitutes a class 6 felony in violation of subsection (2.3)(a). Or, possession of at least twenty-five grams or one ounce of such a compound, mixture, or preparation subjects the violator to enhanced sentencing under subsection (3)(a). To conclude otherwise would be illogical because the two exceptions to the offense that otherwise requires sentencing as a class 4 felony would then apply to offenses having different elements than the primary offense from which they are exceptions.

Moreover, such an interpretation would leave a gap in the coverage under the statute. If defendant's interpretation were applied to the facts of this case, he would not be guilty of a class 6 felony under subsection (2.3) because the mixture he possessed weighed more than one gram, nor would he be liable for enhanced sentencing under subsection (3)(a)(I) because the mixture he possessed did not weigh at least twenty-five grams or one ounce. We conclude that such a result is illogical and inconsistent with the framework of the statute as a whole, particularly since the statute broadly proscribes the possession of controlled substances and was passed because the legislature declared that "the strict control of controlled substances in this state is necessary for the immediate and future preservation of the public peace, health, and safety." § 18–18–401, C.R.S.2009.

Therefore, we conclude that the language of the instruction did not fail to state the elements of the offense nor was it constitutionally deficient.

Defendant argues that the effect of the erroneous instruction was exacerbated by the prosecutor's closing argument, in which the applicable law was described as follows:

> What has to be proven is that [defendant] had more than one gram, 1.03, is more than one gram, of any material, compound[,] mixture[,] or preparation that contains any quantity of a Schedule II controlled substance. So, the question was asked of [the lab technician] yesterday, were there other things in the pills? And she testified that her testing process is to

remove the binders and fillers and other things that are in the pill to get to the controlled substance. The law is that that doesn't matter. It doesn't matter that there were other things and that maybe the controlled substance weighs less than a gram or not. That's not the law. The law is if the material is more than a gram and it has a controlled substance in it, then he possessed more than a gram of any material that contains the controlled substance. So 1.03 grams, more than a gram, was in his sock. And oxycodone is a Schedule II controlled substance.

Based on our interpretation of the applicable statutes, the closing argument correctly explained the law.

## II. Rebuttal Closing Argument

■ Defendant argues that the trial court committed plain error when it allowed the prosecutor to state in rebuttal closing argument that although defendant possessed prescription pills, he did not have prescriptions for them. The parties agree that because defense counsel did not object, our review is for plain error. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005). Under the circumstances of the case, we perceive no error, much less plain error.

During closing argument, defense counsel suggested that reasonable doubt of defendant's guilt existed because prescription drugs were involved, and there might have been a prescription for them:

We saw a lot of prescription drugs yesterday.... We know that you can get treated for disorders with them. We know that you would have to get prescriptions for them from a doctor. Okay. Did we see any prescriptions? Reasonable doubt. That's what this case is. Reasonable doubt.

In rebuttal closing argument, the prosecutor responded:

[Defense counsel] also mentions about these being prescription drugs and that they have legitimate uses. Certainly true, certainly true. But use your reason and your common sense, your life experiences. Think about why some drugs are prescribed and some are not. Why some

prescribed drugs are scheduled as controlled substances and some are not. Think about in your own experience, this is what you bring to the table that's yours, your own experience in life. Where do you keep prescription medication? Stored in a baggie in your sock? Do you take it out of its prescription bottle that tells you when and how to take it and lists the doctor's name, do you take it out of that and hide it in a Tylenol bottle? Is that what you do if these were your drugs and your doctor told you to take them? ... Is it reasonable to think, I mean, first of all there is no evidence that he has got a prescription for these drugs. There was no prescription found in the car. There was no prescription note, there was no prescription bottle, there was nothing on his person, nothing in the car to say that he had these drugs and some doctor said he could take them.

Defendant contends that the prosecutor's rebuttal impermissibly shifted the burden onto defendant to prove that he had prescriptions for drugs he possessed. We disagree.

■ "[C]omment on the lack of evidence confirming a defendant's theory of the case is permissible and does not shift the burden of proof." *Esquivel–Alaniz*, 985 P.2d at 23; *see also People v. Medina*, 190 Colo. 225, 226, 545 P.2d 702, 703 (1976) ("While it is improper to comment intentionally on a defendant's failure to testify, it is permissible to comment on the lack of evidence confirming defendant's theory of the case.").

Here, defense counsel argued that the possibility defendant had a prescription for the drugs could raise a reasonable doubt as to his guilt. Therefore, the prosecution was entitled to point to the lack of evidence supporting such a defense. We perceive no error.

## III. Sentencing

■ Defendant was sentenced to five years in community corrections for count 1 and does not appeal this portion of his sentence. Defendant was also sentenced to concurrent two-year terms in community corrections on each of the three remaining counts. Defendant argues that the trial court violated

his rights by sentencing him in excess of the presumptive range on counts 2, 3 and 4, because the court did not make specific findings to support sentences outside of the presumptive range.

Since defendant began serving his two-year sentences in January 2008 and completed the sentences after the case was at issue, we ordered defendant to show cause why we should not dismiss this aspect of his appeal as moot. Having reviewed defendant's response to the order to show cause, we conclude that the appeal of the sentencing issue is moot, as the sentence has been served and no meaningful relief would be available. Therefore, we decline to address this issue.

The judgment of conviction is affirmed.

Judge TAUBMAN and Judge J. JONES concur.